IN THE CIRCUIT COURT OF
WASHINGTON COUNTY, MISSISSIPPI

BILL ELLIS,                                 ) USDC/NDMS #4:09CV075-A-S
                                            )
    Plaintiff,                              ) CASE NO. 2009-0134 CI
                                            )
vs.                                         )
                                            )
COVENTRY HEALTH AND LIFE                    ) JURY TRIAL REQUESTED
INSURANCE CO. d/b/a COVENTRY                )
HEALTH CARE, INC.;                          )
Fictitious Defendants "A", "B", and "C", being the correct legal name of Defendant known only to the Plaintiff as Coventry Health and Life Ins. Co. d/b/a Coventry Health Care, Inc., and First Health Life and Health Insurance Company; "D", "E", and "F", whether singular or plural, being the person, firm, association, corporation, or other entity who made intentional, negligent and/or reckless misrepresentations, and suppressed or concealed the truth from Plaintiff; "G", "H" and "I", whether singular or plural, being the person, corporation, firm, association, or other entity who negligently or wantonly failed to procure and maintain adequate insurance coverage, who placed the Plaintiff in an unsuitable product, and/or who negligently hired, trained, and supervised its agent who committed the acts or omissions alleged in this complaint; "J", "K" and "L", whether singular or plural, being the person, corporation, firm, association, or other entity who conspired to defraud Plaintiff, and/or who schemed to defraud Plaintiff; "M", "N", and "O", whether singular or plural, being the person, corporation, firm, association, or other entity who is the alter-ego or the predecessor or successor in interest to any of the above-named Defendants; "P", "Q", and "R", whether singular or plural, being the person, corporation, firm, association, or other entity who committed any wrongdoing toward the Plaintiff giving rise to an action in tort, including but not limited to, negligence, wantonness, and breach of fiduciary duties; "S", "T", whether singular or plural, being the person, corporation, firm, association or other entity who is the principal or employer of any of the named defendants; "U", "V" and "W", whether singular or plural, the agents, producers, marketers, insurance broker and/or field marketing organizations or associations that solicited the applications and enrollments in the Advantra Freedom plan at issue in this lawsuit,
                                            )
    Defendants.                             )

## COMPLAINT

COMES NOW the Plaintiff, who hereby submits the following Complaint and states as follows:

Received & Filed

JUN 2 2 2009

Barbara Esters-Parker
By: _____ D.C.

1

## PARTIES, VENUE & JURISDICTION

1. The Plaintiff, BILL ELLIS, is an adult resident of Washington County, Mississippi.

2. Defendant, COVENTRY HEALTH AND LIFE INS. CO. d/b/a COVENTRY HEALTH CARE, INC. (hereinafter referred to as "Coventry"), is a corporation with its principal office, domicile and residence in Maryland and specifically conducts business in Washington County, Mississippi, through its agent, FMO's, sales representatives, employees, general agents, sub-agents, and producers who are acting with apparent, implied or actual authority. In addition to its own individual liability, Coventry is responsible for the actions or inactions of the agents referenced herein under the doctrines of respondeat superior, vicarious liability, agency, sub-agency, and/or other doctrines.

3. Defendants fictitiously described as "A," "B," "C," "D," "E," "F," "G," "H," "I," "J," "K," "L," "M," "N," "O," "P," "Q," "R", "S", "T", "U", "V" and "W" are otherwise unknown to Plaintiff at this time; or if their identities are known to Plaintiff at this time, their identities as proper party Defendants are not known to Plaintiff at this time, but their true and correct names will be substituted by amendment when the aforesaid information is ascertained pursuant to the Mississippi Rules or Civil Procedure.

4. The healthcare plan at issue in this lawsuit was presented to the Plaintiff in Washington County, Mississippi, and a substantial part of the acts, omissions or events giving rise to this lawsuit occurred in Washington County, Mississippi.

## INTRODUCTION

5. The Plaintiff is a dual-eligible[1] Medicare beneficiary who was enrolled in a Medicare Advantage plan – specifically the "Advantra Freedom" plan, which is a healthcare product offered by Defendant Coventry.

6. A statutory creation, a "Medicare Advantage" plan is a privately-run managed healthcare plan that provides coverage for inpatient and outpatient services for Medicare beneficiaries. Basically, under Medicare Advantage plans, Medicare beneficiaries can elect to receive their Medicare benefits through a Medicare Advantage plan of health insurance offered by a private health insurer, rather than through traditional Medicare.

7. When a Medicare beneficiary enrolls in a Medicare Advantage plan, his or her healthcare is tendered from Medicare to the private health insurer. Medicare no longer pays for the healthcare. Instead, Medicare pays the private insurer a set monthly fee to administer and manage the enrollee's healthcare. In order to obtain medical treatment, the enrollee must visit and use health care providers who are willing to accept a plan's terms of payment. If the healthcare provider does not do so, the enrolled member will have to pay for the healthcare costs. These are costs the enrollee otherwise would not have owed under original Medicare.

8. Here, the Medicare Advantage plan at issue is the "Advantra Freedom" plan. It is offered by Defendant Coventry, which is a private health insurer that contracts with the federal government to administer Medicare benefits to Medicare beneficiaries through a private healthcare plan.

---

[1] A "dual-eligible" is a person who has both Medicare and state Medicaid coverage.

9. Coventry contracts with various insurance brokers (also known as "field marketing organizations" or "FMO's") to market its Advantra Freedom plan around the country, including Mississippi. In particular, Coventry contracted with an FMO to provide sales representatives or insurance agents to solicit the Plaintiff's application and enrollment in the Advantra Freedom plan in Washington County, Mississippi.

10. The crux of this lawsuit is based on the unsuitability of the Advantra Freedom plan for the Plaintiff's healthcare needs. Given the healthcare coverage that the Plaintiff had in place at the time of his enrollment, Coventry and its agents should not have enrolled the Plaintiff in the Advantra Freedom plan. As will be shown below, the plan was wholly unsuitable for him, as it actually increased his out-of-pocket costs for healthcare services.

## FACTS

11. The Plaintiff is a poor, elderly, illiterate and uneducated resident of Winterville, Washington County, Mississippi. Until early 2007, he was on a fixed income and received Medicare and Medicaid benefits. In other words, he was a "dual-eligible" beneficiary. As such, nearly 100% of his health care costs were covered through Medicare and state Medicaid. It was virtually free to him, and he was able to obtain health care services through his regular doctors and medical service providers anywhere in the country that accepted Medicare. In short, his healthcare was readily available and cheap.

12. The Plaintiff had no problems with the cost of his healthcare up until late 2006 and early 2007. This changed, however, when Coventry's sales representatives and

4

agents came to Washington County to solicit applications and enrollments in Coventry's Advantra Freedom health insurance plan.

13. At separate times in or around the early part of the year in 2007, two female unidentified Coventry sales representatives came by the Plaintiff's home in Washington County, Mississippi, unannounced and unsolicited, for the purpose of seeking his application and enrollment in Coventry's Advantra Freedom plan.

14. The agents introduced themselves as "Medicare specialists" and agents for Coventry. The Plaintiff believed these statements to be true. The agents inquired about the type of healthcare coverage that the Plaintiff was currently receiving. The Plaintiff informed them that he received Medicare and Medicaid benefits.

15. The agents' sales pitch consisted of the primary representation that the Advantra Freedom plan was better and cheaper than what the Plaintiff received with Medicare and Medicaid coverage. More specifically, the agents stated that the Advantra Freedom plan would be cheaper for him, that it provided better coverage, and that it would cost him much less money than Medicare and Medicaid.

16. Based on these representations about the product, the Plaintiff enrolled in the Advantra Freedom plan.

17. By enrolling in the Advantra Freedom plan, however, the Plaintiff was unwittingly removed from his original Medicare, and his coverage with Medicare was fundamentally replaced and changed for the worse. Consequently, after enrollment, the Plaintiff went to his regular doctors and healthcare providers in Washington County and other surrounding areas and incurred high medical costs from providers who did not accept or agree to bill for the Advantra Freedom insurance (nor would the healthcare

providers accept the Plaintiff's original Medicare cards either, as Medicare no longer administered the Plaintiff's healthcare needs). The Plaintiff also experienced much higher out-of-pocket costs even when visiting health care providers who did, in fact, accept the Advantra Freedom card.

18. Furthermore, the Plaintiff suffered personal and physical injuries as a proximate result of being enrolled in the Advantra Freedom plan. For example, after enrollment, the Plaintiff attempted to get prescription medication from the pharmacy. He discovered, however, that this medication now cost much more than before. The problem was that his Medicare/Medicaid cards were no longer good to pay for them, and the pharmacy would not accept the Advantra Freedom card either. As a result, the Plaintiff would have to pay for the entire cost of the medication, which he could not do on a fixed income. Thus, he was forced to decide whether to pay the exorbitant cost of uncovered medication or do without it. Having no extra money, the Plaintiff chose to forego his medications. This constructive prohibition from getting medical treatment, which was brought on by his enrollment in the Advantra Freedom plan, proximately caused him to become physically ill and endure physical pain and suffering. It also placed him in an immediate risk and danger of additional physical injury and harm. The Plaintiff also suffered mental anguish and emotional distress as a result.

19. The Plaintiff likewise quit seeking medical treatment because his doctors would not accept the Advantra Freedom card. Thus, he had no means of paying for his healthcare treatment. The Plaintiff chose to forego medical treatment to avoid the extraordinary cost of it – costs that otherwise would have been virtually free to him prior to his enrollment in the Advantra Freedom plan. Again, this constructive prohibition

6

from getting medical treatment, which was brought on by his enrollment in the Advantra Freedom plan, proximately caused the Plaintiff to become ill and suffered personal, physical and emotional pain and injury. It also placed him in an immediate risk and danger of additional physical injury and harm.

20. If the Plaintiff had been left alone on his original Medicare and Medicaid plan, he would not have incurred these medical costs and personal injuries. The Plaintiff did not know he had been enrolled in an insurance plan that replaced or fundamentally altered his original Medicare/Medicaid coverage and benefits. If the Plaintiff had known that he was being taken out of Medicare, that the plan did not coordinate with Medicaid, that he would not be able to go to his regular healthcare providers, or that the plan actually increased his out-of-pocket costs for healthcare, he would not have enrolled in the Advantra Freedom plan.

21. As a direct and proximate result of being enrolled in the plan, the Plaintiff suffered damages, to wit: he have incurred medical bills, increased out-of-pocket costs, have suffered other costs such as prescription drug costs, bad debt charge-offs, threat of civil judgments, damaged and/or slandered credit, damaged reputation, the loss of the value of this money, the loss of interest on this money, the loss of his original Medicare/Medicaid plan, payments for Medicare Part B premiums, personal and physical injuries, mental anguish and emotional distress.

22. As will be shown below, these problems are the direct and proximate result of Coventry's tortious wrongdoing with respect to the enrollment of dual-eligible beneficiaries in Advantra Freedom products. Based on information and belief, Coventry and its corporate officers knew that the Advantra Freedom products were complex and

that the benefits under the plans did not coordinate with state Medicaid benefits. Coventry also knew that the Advantra Freedom products were unsuitable for dual-eligible Medicare beneficiaries such as the Plaintiff, as the products actually increased his financial exposure.

23.     Despite this knowledge, Coventry aggressively marketed its Advantra Freedom products to the Plaintiff through its insurance brokers and FMO's, without informing the Plaintiff of the problems with the product. Thus, Coventry acted recklessly and in conscious disregard for the rights of the dual-eligible Plaintiff.

24.     Although Coventry stood in the best position to stop the enrollment of the dual-eligible Plaintiff in its Advantra Freedom product, it did nothing about it. Indeed, Coventry had no system in place to prevent his enrollment or to ensure or verify that the Advantra Freedom plan was beneficial and suitable for the Plaintiff. Coventry failed to develop and/or adhere to any system of checks and balances that would allow it to determine whether a potential enrollee was a dual-eligible beneficiary. Coventry failed to develop and/or adhere to any system of checks and balances that would allow it to determine whether the Advantra Freedom product was suitable and beneficial for that dual-eligible enrollee. Coventry failed to train and/or inform its agents and sales representatives, whether directly or through insurance brokers and FMO's, that the Advantra Freedom plan was unsuitable for the dual-eligible Plaintiff. As a proximate result of these combined and concurring acts, the Plaintiff has been damaged as set out in paragraph 21 above.

25.     The Plaintiff did not discover the facts giving rise to this legal action – that the healthcare product in which he were enrolled was a sham product wholly unsuitable

for his healthcare needs and that the Defendant had deceived them – until within three years of filing this lawsuit. Furthermore, even with the exercise of reasonable diligence, the Plaintiff should not have discovered the facts giving rise to this cause of action until within three years of filing this lawsuit. The Defendant also concealed the true nature of the unsuitability of the product by failing to inform or train its agents that the plan should not have been sold to a dual-eligible.

## COUNT I

26. Plaintiff adopts and incorporates by reference all of the preceding allegations; and to the extent this claim contradicts any other legal claim, it is pleaded in the alternative.

27. At the Plaintiff's home in Washington County, Mississippi, in or around early 2007, Defendant Coventry, by and through its agents and fictitious parties, with Coventry's authority and direction, misrepresented, either intentionally, negligently, or recklessly without knowledge, the following present, material facts to the Plaintiff in an effort to entice him to enroll in the Advantra Freedom healthcare plan in question:

   (a)    that the Advantra Freedom plan is better;

   (b)    that the Advantra Freedom plan is cheaper;

   (c)    that the Advantra Freedom plan provides better coverage; and

   (d)    that the Advantra Freedom plan costs less.

28. The above representations were material and false and were deliberately, negligently or recklessly presented to the Plaintiff by Defendant in full knowledge of their falsity or with reckless disregard as to the truth. Plaintiff did not know the above representations were false, and relied upon the above present, material representations by

enrolling in the plan at issue. Plaintiff had a right to rely on the above representations by the Defendant.

29. Furthermore, the Defendant concealed the following material information from the Plaintiff related to the Advantra Freedom plan:

(a) that the Advantra Freedom plan is not better;

(b) that the Advantra Freedom plan is not cheaper;

(c) that the Advantra Freedom plan does not provide better coverage and, actually, provides worse coverage;

(d) that the Advantra Freedom costs more;

(e) that by enrolling, the Plaintiff is taken out of his original Medicare coverage;

(f) that the Advantra Freedom plan replaces the Plaintiff' original Medicare coverage and benefits;

(g) that the Advantra Freedom plan fundamentally alters the Plaintiff' original Medicare/Medicaid coverage and benefits and that the Plaintiff will not receive those same benefits;

(h) that the Plaintiff can no longer use his Medicare/Medicaid cards;

(i) that the Advantra Freedom plan was unsuitable;

(j) that the Advantra Freedom plan increases the Plaintiff' financial exposure; and

(k) that that Advantra Freedom plan does not coordinate with Medicaid.

30. The above concealed and/or misrepresented material facts were misrepresented and/or concealed by Defendant despite the fact that Defendant was in a position of vastly superior knowledge to that of Plaintiff concerning healthcare matters. Defendant had a duty to disclose such facts. If the Plaintiff had known these material facts, he would not have enrolled in the plan at issue. Through the exercise of reasonable

care, the Plaintiff should not have known, and did not know, about the true nature of the plan at issue or the Defendant's misrepresentations, or that the Defendants failed to disclose material aspects of the product, until within two years of filing this lawsuit.

31. Upon information and belief, such conduct by the Defendant and its agents is a part of a pattern and practice of activities involving enrollees in the State of Mississippi.

32. As a direct and proximate result of the Plaintiff's enrollment, he suffered damages as set forth in paragraph 21 above.

WHEREFORE PREMISES CONSIDERED, Plaintiff demands judgment against Defendants, both named and fictitious, jointly, separately and severally, for compensatory and punitive damages, in an amount to be determined by a struck jury, plus interest from the date of injury, costs and any other relief to which Plaintiff may be entitled not to exceed $74,900.

## COUNT II

33. Plaintiff adopts and incorporates by reference all of the preceding allegations; and to the extent this claim contradicts any other legal claim or allegation, it is pleaded in the alternative.

34. Defendant Coventry and other unknown fictitious party defendants (hereinafter referred to collectively in this Count as "Defendants") had a duty to supervise, employ and retain competent and responsible agents, servants, employees and/or representatives to carry out its business. Defendants breached these duties with regard to the agents who enrolled the Plaintiff in the plan at issue.

35. Said duty requires ascertaining the qualifications, skills and abilities, including but not limited to, determining and monitoring the representatives' conduct while performing company business to ensure that the company's business is being carried out in a proper manner by its agents, servants, representatives and/or employees.

36. Defendants negligently and/or wantonly and/or recklessly breached this duty by failing and refusing to train, supervise, employ and retain competent and responsible agents, servants, employees or representatives. Further, Defendants, both named and fictitious, negligently and/or wantonly breached their duty to promptly investigate, ascertain and determine the skills and conduct of their agents, servants, employees and/or representatives and to determine the ability of such agents, servants, representatives and employees to properly conduct company business. Finally, Defendants, both named and fictitious, negligently and/or wantonly and/or recklessly breached their duty to fully and completely train, supervise, monitor or otherwise ensure that their business was being operated in a proper manner by its agents, servants, representatives, and/or employees and that the plan at issue was being properly sold and represented to the Plaintiff.

37. As a direct and proximate result of Defendants' combining and concurring negligent and/or wanton acts, Plaintiff was damaged as set out in ¶ 21 above.

WHEREFORE PREMISES CONSIDERED, Plaintiff demands judgment against Defendants, both named and fictitious, jointly, separately and severally, for compensatory and punitive damages, in an amount to be determined by a struck jury, plus interest from the date of injury, costs and any other relief to which Plaintiff may be entitled not to exceed $74,900.

## COUNT III

38. Plaintiff adopts and incorporates by reference all of the preceding allegations; and to the extent this claim contradicts any preceding claim or allegation, the following is pleaded in the alternative.

39. The circumstances described above amount to Negligence or Wantonness on the part of Coventry and the unknown fictitious party defendants. The Defendant breached its duty of care owed to the Plaintiff and/or acted recklessly and with conscious disregard for the rights of the Plaintiff. Such conduct by the Defendant is a part of a pattern and practice of activities involving enrollees nationwide and in the State of Mississippi.

40. The negligence and/or wanton acts include, but are not limited to, enrolling the Plaintiff in the Advantra Freedom plan and/or replacing his original Medicare/Medicaid coverage against his best interests, and putting him in a worse situation, both physically and financially, as described and set out above; placing him in an unsuitable product; failing to procure adequate and suitable health insurance; failing to adequately train the agents and FMO's who represented and sold the plan to the Plaintiff; failing to adequately represent the plan to the Plaintiff; acting against the best interest of the Plaintiff; failing to determine that the Plaintiff was a dual-eligible beneficiary; and failing to determine whether the product was suitable for him.

41. Such Negligence or Wantonness was the proximate cause of damage to Plaintiff as set out in ¶ 21 above.

WHEREFORE PREMISES CONSIDERED, Plaintiff demands judgment against Defendants, both named and fictitious, jointly, separately and severally, for compensatory

and punitive damages, in an amount to be determined by a struck jury, plus interest from the date of injury, costs and any other relief to which Plaintiff may be entitled not to exceed $74,900.

### COUNT IV

42. Plaintiff adopts and incorporates by reference all of the preceding allegations; and to the extent this claim contradicts any other legal claim, it is pleaded in the alternative.

43. Defendants, both named and fictitious, engaged in a scheme to defraud and/or conspired to commit the torts alleged herein.

44. Such conspiracy was the proximate cause of damage to Plaintiff, and Plaintiff suffered damages as set out in ¶ 21 above.

WHEREFORE PREMISES CONSIDERED, Plaintiff demands judgment against Defendants, both named and fictitious, jointly, separately and severally, for compensatory and punitive damages, in an amount to be determined by a struck jury, plus interest from the date of injury, costs and any other relief to which Plaintiff may be entitled, not to exceed $74,900.

PLAINTIFF DOES NOT MAKE ANY CLAIM FOR RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, IN EXCESS OF $74,900.00. UNDER NO CIRCUMSTANCES WOULD THE TOTAL AMOUNT OF RELIEF, INCLUDING BOTH EQUITABLE RELIEF AND MONETARY DAMAGES, EXCEED $74,900.00 FOR PLAINTIFF. EVEN IF PLAINTIFF RECOVERED UNDER EACH COUNT OF THE COMPLAINT, THE TOTAL RECOVERY FOR PLAINTIFF WOULD NOT EXCEED $74,900 IN THE AGGREGATE. PLAINTIFF MAKES NO CLAIMS PURSUANT TO ANY FEDERAL LAW; NOR DOES PLAINTIFF MAKE ANY CLAIM THAT WOULD GIVE RISE TO FEDERAL JURISDICTION. PLAINTIFF'S CLAIMS ARISE SOLELY FROM STATE LAW. FURTHERMORE, THE PLAINTIFF DOES NOT SEEK A COVERAGE DETERMINATION OR ADMINISTRATIVE HEARING REGARDING ANY BENEFITS PROVIDED (OR NOT PROVIDED) BY COVENTRY OR MEDICARE. THE PLAINTIFF IS NOT SEEKING TO

COMPEL COVENTRY OR MEDICARE TO RE-EVALUATE A COVERAGE DECISION. NOR IS THE PLAINTIFF SEEKING TO INVOKE ANY GRIEVANCE PROCEDURES AFFILIATED WITH MEDICARE OR COVENTRY. THE PLAINTIFF SEEKS ONLY STATE LAW-DERIVED COMPENSATION AND EQUITABLE RELIEF FOR DAMAGES THAT HE INCURRED AND WRONGS SUFFERED AS A RESULT OF BEING FRAUDULENTLY AND TORTIOUSLY ENROLLED IN THE ADVANTRA FREEDOM PLAN AT ISSUE.

PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS

Respectfully Submitted,

_____
J. Matthew Stephens (MS Bar No. 101022)
Attorneys for Plaintiff

OF COUNSEL:

McCALLUM, METHVIN & TERRELL, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone:    (205) 939-0199
Facsimile:    (205) 939-0399

Please Serve the Defendants by certified mail to the following addresses:

Coventry Health & Life Insurance Company d/b/a Coventry Healthcare, Inc.
c/o Registered agent for service of process, W.C. Noblin, Jr.,
840 Trustmark Building
248 East Capitol
Jackson, MS 39201